1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

9
10

| | |
|---|---|
| GEN ADS, LLC, a Washington limited liability company; CARTMELL HOLDINGS, LLC, a Washington limited liability company; and HILLSTROM EQUITIES, LLC, a Minnesota limited liability company, | CASE NO. **COMPLAINT** |
| Plaintiffs, | |
| v. | |
| ANDREW BREITBART, an individual; SUSANNAH BEAN BREITBART, an individual; the BREITBART marital community, a California marital community comprised of ANDREW AND SUSANNAH BEAN BREITBART; BREITBART.COM, LLC, a California limited liability company; and BREITBART HOLDINGS, INC. (f/k/a BREITBART.COM, INC.), a California corporation, | |
| Defendants. | |

11
12
13
14
15
16
17
18
19
20
21
22
23
24

Plaintiffs GEN ADS, LLC, CARTMELL HOLDINGS, LLC, and

25

HILLSTROM EQUITIES, LLC, file this Complaint against defendants

26

ANDREW BREITBART, SUSANNAH BEAN BREITBART, the BREITBART

27

marital community, BREITBART.COM, LLC, and BREITBART HOLDINGS,

28

INC., on personal knowledge as to their own activities, and on information

COMPLAINT - 1

**NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

and belief as to the activities of others, as follows:

## I. THE PARTIES

1.     Plaintiff GEN ADS, LLC ("Gen Ads") is a Washington limited liability company with its principal place of business in Seattle, Washington.

2.     Plaintiff CARTMELL HOLDINGS, LLC ("Cartmell Holdings") is a Washington limited liability company with its principal place of business in Seattle, Washington, and is a Member of Gen Ads.

3.     Plaintiff HILLSTROM EQUITIES, LLC ("Hillstrom Equities") is a Minnesota limited liability company with its principal place of business in Minneapolis, Minnesota, and is a Member and Manager of Gen Ads.

4.     Gen Ads, Cartmell Holdings, and Hillstrom Equities are referred to collectively herein as "Plaintiffs"; and each individually is referred to as a "Plaintiff".

5.     Defendant ANDREW BREITBART ("Andrew") is an individual residing in Los Angeles, California.

6.     Defendant SUSANNAH BEAN BREITBART ("Mrs. Breitbart") is an individual residing in Los Angeles, California.

7.     The BREITBART marital community is a California marital community comprised of Andrew Breitbart and Susannah Bean Breitbart. All of the actions Andrew Breitbart took as alleged herein were undertaken on behalf of himself, Mrs. Breitbart, and the marital community comprised thereof. Accordingly, each of Andrew Breitbart, Mrs. Breitbart and the martial community are liable for the damages Gen Ads suffered arising out of Andrew Breitbart's activities.

8.     Defendant BREITBART.COM, LLC ("BL") is a California limited liability company with its principal place of business in Los Angeles County, California.

9.     Defendant BREITBART HOLDINGS, INC. ("BHI") is a California

COMPLAINT - 2

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

corporation with its principal place of business in Los Angeles County, California. However, during most of the period relevant to the facts alleged herein, BHI was a California corporation named BREITBART.COM, INC. On December 30, 2005, Defendant Andrew Breitbart caused a Certificate of Amendment to be filed with the California Secretary of State, which effected an amendment to BHI's articles of incorporation renaming the corporation Breitbart Holdings, Inc.

10.    Defendant Andrew Breitbart controls defendants BL and BHI.

11.    Collectively, Andrew Breitbart, Mrs. Breitbart, the Breitbart marital community, BHI, and BL, are referred to herein as "<u>Defendants</u>"; and each individually is referred to as a "<u>Defendant</u>".

12.    Each Defendant aided and abetted the actions of the other Defendants as set forth below, in that each Defendant had knowledge of those actions, provided assistance and benefitted from those actions. Each of the Defendants was the agent of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and with the permission and consent of the other Defendants.

## II.  JURISDICTION AND VENUE

13.    This is a civil action seeking damages for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, fraud, copyright infringement, and declaratory relief.

14.    This Court has jurisdiction over the subject matter of this action pursuant to 17 U.S.C. § 101 *et seq.* (copyright); 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338(a) (copyright). In addition, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

COMPLAINT - 3

**NEWMAN & NEWMAN,**
**ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

15.     This Court has personal jurisdiction over the defendants and each of them pursuant to FED. R. CIV. P. 4(k)(1)(A) because each defendant could be subjected to the jurisdiction of a court of general jurisdiction in the state in which this Court is located, pursuant to RCW § 4.12.025, because: (i) each of the defendants has done, and is doing, business in this state; (ii) the defendants and each of them have engaged in unfair competition having an effect in this state; and (iii) Andrew (on his own behalf and on behalf of his marital community), BHI, and BL consented to jurisdiction here by entering into agreements with Plaintiffs governed by Washington law, which require that disputes arising out of or relating to such agreements be adjudicated in King County, Washington.

16.     This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(a)(3) because Defendants, and each of them, are subject to personal jurisdiction in this judicial district, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.  Additionally, the contracts between Plaintiffs, on the one hand, and Defendants, on the other hand, that form the basis of Plaintiffs' breach of contract claims provide that venue for any litigation concerning the contract will be a court located in King County, Washington.

## III.  FACTS

17.     Gen Ads is an Internet advertising firm.  Among other things, Gen Ads sells (to third parties) advertising space on web sites operated by its clients.

18.     Defendant Andrew Breitbart became a member of Gen Ads purportedly through Breitbart Holdings, Inc.  However, Breitbart Holdings, Inc. did not exist at the time the parties formed Gen Ads or signed the Gen Ads Limited Liability Company Agreement (the "LLC Agreement").

COMPLAINT - 4

1     19.    At the time the parties signed the LLC Agreement, Andrew

2  owned Breitbart.com, Inc., a California corporation.

3     20.    A couple of months after the parties signed the LLC Agreement,

4  Andrew caused the filing of a Certificate of Amendment effecting the articles

5  of incorporation for Breitbart.com, Inc. to reflect the name of that corporation

6  as Breitbart Holdings, Inc.

7     21.    Because Breitbart Holdings, Inc. did not exist at the time the

8  parties formed Gen Ads and signed the LLC Agreement, Breitbart Holdings,

9  Inc. could not be a member of Gen Ads.

10     22.    Consequently, Defendants Andrew Breitbart, Mrs. Breitbart, and

11  the Breitbart martial community are together, personally and individually, a

12  member of Gen Ads.

13     23.    Andrew is associated with Matt Drudge's news web site *the*

14  *Drudge Report*, located on the Internet at <<www.drudgereport.com>>, which

15  reportedly receives more than 3 million unique visitors a month and

16  generates more than $1 million in advertising revenue annually.

17     24.    In particular, Andrew controls certain content that appears on

18  <<drudgereport.com>>, as a consequence of which he has the ability to direct

19  traffic (*i.e.*, Internet end users) from <<drudgereport.com>> to other web sites

20  (*i.e.*, by inserting hyperlinks that end users click to be redirected to another

21  web site).

22     25.    Defendant BL, which Andrew controls, owns and operates the

23  Internet web site http://www.breitbart.com (the "Breitbart Site").  The

24  Breitbart Site was launched August 17, 2005, and almost immediately

25  became one of the most trafficked sites on the Internet, with a reported 2.64

26  million visits in its first month of operation.

27     26.    Nearly all of the traffic on the Breitbart Site originated on

28  <<drudgereport.com>> because Andrew caused the traffic to be diverted from

COMPLAINT - 5

1  <<drudgereport.com>> to the Breitbart Site.

2      27.    Gen Ads was formed to, among other things, generate revenue

3  from the significant traffic at the Breitbart Site.

4      28.    Pursuant to Section 3.2 of the LLC Agreement, Gen Ads is

5  managed by Managers.  A true and correct copy of the LLC Agreement is

6  attached hereto as **Exhibit A**.

7      29.    The Managers of Gen Ads are purportedly Global DNS, LLC (as

8  general manager), Hillstrom Equities, LLC and Breitbart Holdings, Inc.

9      30.    The LLC Agreement provides Gen Ads the exclusive right to sell

10  advertising on any web site operated by a Member.  In particular, section 13.2

11  of the LLC Agreement provides,

12      The Members hereby acknowledge that each Member has various
13      "Affiliates" (defined below) which own and operate various Web
        properties (the "Affiliate Properties").  The Members hereby
14      acknowledge and agree that if any Affiliate Property desires to offer
        third parties a right to publish on an Affiliate Property any material
15      that promotes a brand or a product or a service of such third party
        through advertising banners, text links, buttons, jump pages and
16      similar promotional devices as well as all elements of a sponsorship
        or promotion ("Advertising"), the Company shall have the right to
17      exclusively manage and supervise the sale of Advertising on the
        applicable Affiliate Property in accordance with the agreement set
18      forth in Exhibit C attached hereto (the "Service Agreement").

19      31.    Defendant BL is an "Affiliate" of BHI as that term is defined in

20  section 1.2 of the LLC Agreement.

21      32.    The Breitbart Site is an "Affiliate Property" as defined by the

22  LLC Agreement.

23      33.    On November 11, 2005, Gen Ads and BL entered into an

24  Exclusive Advertising Services Agreement in relation to the Breitbart Site

25  (the "Advertising Agreement").  A true and correct copy of the Advertising

26  Agreement is attached hereto as **Exhibit B**.

27      34.    The Advertising Agreement grants Gen Ads the exclusive right to

28  sell advertising on the Breitbart Site.  Specifically, section 2 of the Agreement

COMPLAINT - 6

provides:

> [BL] hereby grants to GENADS the worldwide exclusive right to sell all Advertising on the [Breitbart] Site(s) at prices and terms solely determined by GENADS during the term of this Agreement. Accordingly, under no circumstances shall [BL] retain a third party to solicit Advertisers for the [Breitbart] Sites (other than GENADS). Further, [BL] shall not solicit to the exclusion of GENADS any Advertisers unless approved in writing by GENADS.   Exclusivity under this Section 2 shall be subject to the terms of Section 5 of this Agreement, and conditioned on [BL] receiving the Minimum Royalty Payment pursuant to Section 6.3 of this Agreement.

35.   Section 3 of the Advertising Agreement similarly provides:

> [BL] represents, warrants, covenants and agrees: (e) not to engage, contract with, license or permit any person, firm or entity (including [BL] and its employees) other than GENADS and its employees to sell, or represent [BL] for the sale of Advertising on the [Breitbart] Site and to refer all advertising inquiries to GENADS.

36.   BL is obligated by the Advertising Agreement to insert on the Breitbart Site HTML or other code provided by Gen Ads to enable Gen Ads to place advertisements on the Breitbart Site.

37.   In November 2005, Gen Ads learned that BL had entered into an advertising agreement with Reuters, a third party, for the placement of multiple links on the Breitbart Site to promote the Reuters site (the "Reuters Advertising").

38.   Indeed, Andrew was negotiating the agreement to place Reuters Advertising at the time he was negotiating the Advertising Agreement and LLC Agreement with Gen Ads, Cartmell Holdings, and Hillstrom Equities.

39.   Andrew represented at the time he entered the Advertising Agreement on behalf of BL, and the LLC Agreement, that he was not negotiating with any third parties, but rather was only negotiating with Gen Ads and its principals for an advertising deal.

40.   Andrew omitted from his representations about exclusivity with Gen Ads that he was negotiating with Reuters.

41.   Pursuant to the agreement with Reuters, BL has included on the

COMPLAINT - 7

Breitbart Site eighteen (18) pages devoted to promoting the Reuters news service, with each such promotional page including news story teasers.

42.    End users (*i.e.*, consumers) cannot view the news stories referenced by said Reuters Advertising teasers without clicking on a link, at which time the end user is directed to the Reuters web site and away from the Breitbart Site.  Each story also has a text link to Reuters.  Additionally, the top of each page has a graphical link to Reuters.

43.    BL collects a fee in consideration for placing the Reuters Advertising on the Breitbart Site.

44.    As a result of end users being redirected from the Breitbart Site to the Reuters site, the value of advertising Gen Ads sells on the Breitbart Site is reduced dramatically.

45.    The Advertising Agreement defines "Advertising" as "the material that promotes a product or a brand or a service through advertising banners, text links, buttons, jump pages and similar promotional devices as well as all elements of a sponsorship or promotion."

46.    The Reuters Advertising is "Advertising" as defined in the Advertising Agreement.

47.    The Advertising Agreement provides that Gen Ads is responsible for collecting revenue generated by Advertising on the Breitbart Site, and requires BL to make prompt payment to Gen Ads of any payment for Advertising that is paid directly to BL rather than to Gen Ads.

48.    On November 30, 2005, Gen Ads notified BL that the Reuters Advertising constitutes "Advertising" under the Advertising Agreement, and demanded that BL make payment to Gen Ads of any revenue received by BL from Reuters in connection with the Reuters Advertising.

49.    BL refused, and continues to refuse, to account to Gen Ads for the revenues it has received and continues to receive from Reuters.

COMPLAINT - 8

50.     Section 4(e) of the Advertising Agreement gives BL the right to consent or withhold consent as to the content of the advertisements delivered to the Breitbart Site.

51.     At the time the parties entered into the Advertising Agreement, neither BL nor Gen Ads understood section 4(e) of the Advertising Agreement to require Gen Ads to present advertisements to BL for approval prior to placing such advertisements on the Breitbart Site.  Rather, the mutual understanding of Gen Ads and BL was that Gen Ads would place advertisements on the Breitbart Site, and BL would instruct Gen Ads to remove any advertisements to which it objected.

52.     Prior to Gen Ads's demand that BL account for the revenue received for the Reuters Advertising, BL and Gen Ads acted in a manner consistent with this understanding: BL instructed Gen Ads to remove certain advertisements from the Breitbart Site after those advertisements had appeared on the Breitbart Site, and never asked to review any advertisements before Gen Ads placed them on the Breitbart Site.

53.     Defendant Andrew induced Gen Ads to enter the Advertising Agreement by representing that (1) Andrew would continue to cause traffic to be directed from <<drudgereport.com>> to the Breitbart Site to the greatest extent possible; (2) Andrew would not, for consideration, cause traffic to be directed from <<drudgereport.com>> to any site other than the Breitbart Site; and (3) GenAds would have the ability to sell at least five (5) advertising locations on the Breitbart Site.

54.     Since November 2005, or earlier, Andrew has caused traffic to be directed from <<drudgereport.com>> to Reuters.  The hyperlinks to Reuters on <<drudgereport.com>> include the same tracking code as the hyperlinks to Reuters on the Breitbart Site. Accordingly, Andrew (directly or through one of the other defendants) is receiving consideration from Reuters for the

COMPLAINT - 9

advertising on <<drudgereport.com>>.

55.    On December 23, 2005, BL (through its counsel) informed Gen Ads that it would make available to Gen Ads only two (2) advertising locations on the Breitbart Site, and demanded that Gen Ads comply with a laundry list of unreasonable requirements to which Gen Ads had never agreed.

56.    In particular, BL demanded that Gen Ads provide all advertisements to BL for its approval ten days prior to placing such advertisements on the Breitbart Site; that advertisements provided by Gen Ads not include video or audio, or include popovers or popunders, or be duplicated on a single web page, or consist solely or primarily of text; that "run of network" advertisements (*i.e.*, advertisements that Gen Ads places on additional sites for which it sells advertising space) appear in no more than one advertising location on the Breitbart Site; and that Gen Ads provide weekly statements signed "under penalty of perjury" certifying compliance with BL's restrictions.

57.    BL's unilateral demands are both unreasonable and inconsistent with standard industry practice and the Advertising Agreement.

58.    When Gen Ads advised BL that it lacked authority to impose such requirements, BL asserted that Gen Ads would be in breach of the Advertising Agreement if it did not comply with BL's extracontractual demands.

59.    Gen Ads is, and at all relevant times has been, the copyright owner under United States copyright law with respect to certain software code entitled NEWSFEED CODE (the "Original Code"), which it uses to place advertisements dynamically on a Gen Ads client site, such as the Breitbart Site.

60.    Gen Ads is informed and believes that defendants BL and

COMPLAINT - 10

1   Andrew Breitbart, beginning sometime between December 14, 2005 and
2   January 3, 2006, without the permission or consent of Gen Ads,
3   misappropriated the Original Code by reproducing it and distributing it on
4   the Breitbart Site.

## IV.  FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
#### (By Gen Ads Against Breitbart.com, LLC)

7   61.     Plaintiffs incorporate the allegations set forth in paragraphs 1
8   through 60 above as though fully set forth herein.

9   62.     On or about November 11, 2005, Gen Ads and BL entered into a
10  written agreement.

11  63.     Beginning on or about November 20, 2005, and continuing
12  through the present, BL breached the agreement by, among other things,
13  selling advertising space on the Breitbart Site to Reuters to the exclusion of
14  Gen Ads and failing to make payment to Gen Ads of revenue received from
15  Reuters.

16  64.     Gen Ads has performed its obligations to BL as required by the
17  Advertising Agreement, except to the extent its performance was prevented
18  or excused by the conduct of defendant BL.

19  65.     By engaging in the acts alleged herein, BL has breached its
20  obligations under sections 2, 3(b), 3(e), and 6.4 of the Advertising Agreement,
21  among others.

22  66.     As a direct, proximate and foreseeable result of BL's breach of the
23  Advertising Agreement, Gen Ads has been damaged in an amount to be
24  determined at trial, but which Gen Ads believes exceeds $75,000.00.

25  67.     Gen Ads is entitled to its reasonable attorney's fees pursuant to
26  section 17 of the Advertising Agreement.

27  ///
28  ///

COMPLAINT - 11

**NEWMAN & NEWMAN,**
**ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

## V.  SECOND CAUSE OF ACTION
### BREACH OF CONTRACT
**(By Cartmell Holdings, LLC and Hillstrom Equities, LLC against all Defendants except Breitbart.com, LLC)**

68.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 67 above as though fully set forth herein.

69.     On or about September 1, 2005, Cartmell Holdings, Hillstrom Equities and Andrew Breitbart (purportedly as Breitbart Holdings, Inc.) entered into the LLC Agreement.

70.     Breitbart Holdings, Inc. did not exist at the time Andrew purported to execute the LLC Agreement on its behalf, and consequently, Andrew is personally liable for BHI's failure to honor its obligations under the LLC Agreement.

71.     The LLC Agreement provides Gen Ads the exclusive right to sell advertising on any web site operated by a Member or an Affiliate of a Member.

72.     Beginning in or about November 2005, and continuing through the present, BHI and Andrew breached the LLC Agreement by allowing BL to sell  advertising space on the Breitbart Site to Reuters, to the exclusion of Gen Ads and in derogation of Gen Ads's exclusive right to sell advertising on the Breitbart Site.

73.     Cartmell Holdings and Hillstrom Equities have performed their respective obligations to Andrew and BHI as required by the LLC Agreement, except to the extent their performance was prevented or excused by the conduct of Defendants Andrew and/or BHI.

74.     By engaging in the acts alleged herein, Andrew and BHI have breached their obligations under section 13.2 of the LLC Agreement.

75.     As a direct, proximate and foreseeable result of Andrew's and BHI's breach of the LLC Agreement, Cartmell Holdings and Hillstrom

COMPLAINT - 12

1  Equities have been damaged in amount to be determined at trial, but which
2  each believes exceeds $75,000.00.

3       76.    Andrew's acts of breach, and his entry into the LLC Agreement,
4  were done on behalf of himself and his marital community.  Accordingly,
5  Andrew Breitbart, Susannah Bean Breitbart and the Breitbart marital
6  community are jointly and severally liable for said breach of contract and the
7  damages caused thereby.

8       77.    Cartmell Holdings and Hillstrom Equities are entitled to their
9  reasonable attorney fees pursuant to section 14.2 of the LLC Agreement.

10                  **VI.  THIRD CAUSE OF ACTION**
11  **BREACH OF FIDUCIARY DUTY**
     **(By all Plaintiffs against all Defendants except Breitbart.com, LLC)**

12       78.    Plaintiffs incorporate the allegations set forth in paragraphs 1
13  through 77 above as though fully set forth herein.

14       79.    By virtue of their role as a Manager of Gen Ads, and as expressly
15  acknowledged by section 3.7 of the LLC Agreement, Andrew and BHI have a
16  fiduciary duty to Gen Ads and its Members.

17       80.    As fiduciaries, Andrew and BHI owe Gen Ads the highest duty of
18  good faith and loyalty.

19       81.    Pursuant to section 13.2 of the LLC Agreement, Gen Ads has the
20  exclusive right to sell advertising on Affiliate Properties, as that term is
21  defined by the LLC Agreement, and Andrew and BHI are obligated to cause
22  their Affiliate Properties to effectuate Gen Ads's exercise of that right.

23       82.    The Breitbart Site is an Affiliate Property.

24       83.    Andrew and BHI breached their fiduciary duty to Gen Ads by
25  causing their Affiliate, BL, to enter into an agreement with Reuters to the
26  exclusion of Gen Ads, in derogation of their duties and in violation of the LLC
27  Agreement and the Advertising Agreement.  By thus placing their own
28  interests ahead of those of Gen Ads, Andrew and BHI breached their

COMPLAINT - 13

1   fiduciary duty of loyalty.

2   84.   Andrew further breached his fiduciary duty to Gen Ads by

3   causing traffic originating at <<drudgereport.com>> to link directly to

4   Reuters, for which traffic he (directly or through another defendant) received

5   consideration from Reuters.   Under his fiduciary duty, Andrew was obligated

6   to cause all such traffic to be directed to the Breitbart Site, and to account to

7   Gen Ads for any revenue generated thereby.

8   85.   Andrew undertook the acts alleged herein on behalf of himself

9   and his marital community.  Accordingly, Andrew Breitbart, Susannah Bean

10   Breitbart and the Breitbart marital community are jointly and severally

11   liable for said breach of fiduciary duty.

12   86.   As a direct, proximate and foreseeable result of Andrew's breach

13   of fiduciary duty, Plaintiffs have been damaged in amount to be determined

14   at trial, but which Plaintiffs believe exceeds $75,000.00.

15   ## VII.  FOURTH CAUSE OF ACTION
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

16   **(By Gen Ads Against Breitbart.com, LLC)**

17   87.   Plaintiffs incorporate the allegations set forth in paragraphs 1

18   through 86 above as though fully set forth herein.

19   88.   Under Washington law, there is in every contract an implied

20   covenant of good faith and fair dealing, requiring each party to cooperate with

21   the other so that he may obtain the full benefit of performance.

22   89.   Defendant BL has interfered with, obstructed, and otherwise

23   undermined Gen Ads's ability to perform its obligations under the

24   Advertising Agreement.

25   90.   When a visitor clicks on one of the links to Reuters that BL has

26   placed on the Breitbart site, the visitor leaves the Breitbart Site and is

27   directed to the Reuters site.  As a result, that visitor generates no further

28   page impressions on the Breitbart Site. As a result, the visitor is prevented

COMPLAINT - 14

1  from clicking on any advertisements on the Breitbart Site.  Accordingly, by

2  directing traffic away from the Breitbart Site to Reuters, BL reduced both the

3  overall traffic on the Breitbart Site and the click-through rate for

4  advertisements placed by Gen Ads, thus constraining Gen Ads's ability to

5  obtain the full benefit of its performance under the Advertising Agreement.

6      91.    In addition, BL has imposed unreasonable, arbitrary and

7  burdensome requirements on Gen Ads's performance under the Advertising

8  Agreement. BL's conduct is calculated to cause Gen Ads to breach the

9  Advertising Agreement. BL's calculation is evidenced by (among other things)

10 BL's repeatedly asserting, without justification, that Gen Ads is in breach of

11 the Advertising Agreement for failure to comply with its unilaterally imposed,

12 extracontractual demands.

13     92.    By this conduct, BL has violated the implied covenant of good

14 faith and fair dealing required by the Advertising Agreement

15     93.    As a direct, proximate and foreseeable result of BL's breach of the

16 implied covenant of good faith and fair dealing, Gen Ads has been damaged in

17 amount to be determined at trial, but which Gen Ads believes exceeds

18 $75,000.00.

19

20                    **VIII.  FIFTH CAUSE OF ACTION**
                              **FRAUD**
21  **(By Plaintiffs Against Andrew Breitbart, Mrs. Breitbart, and the**
                    **Breitbart Marital Community)**

22     94.    Plaintiffs incorporate the allegations set forth in paragraphs 1

23 through 93 above as though fully set forth herein.

24     95.    In or about August, 2005, defendant Andrew Breitbart falsely and

25 fraudulently represented to Gen Ads that (1) Andrew would continue to cause

26 traffic to be directed from <<drudgereport.com>> to the Breitbart Site to the

27 greatest extent possible; (2) Andrew would not, for consideration, cause traffic

28 to be directed from <<drudgereport.com>> to any site other than the

COMPLAINT - 15                    **NEWMAN & NEWMAN,**      505 Fifth Ave. S., Ste. 610
                                  **ATTORNEYS AT LAW, LLP**  Seattle, Washington 98104
                                                            (206) 274-2800

1  Breitbart Site; (3) GenAds would have the ability to sell at least five (5)

2  advertising locations on the Breitbart Site; and (4) Andrew was not

3  negotiating with any third party for an advertising agreement (collectively

4  the "Representations").

5      96.    At the time Andrew made the Representations to Plaintiffs Gen

6  Ads, Cartmell Holdings and Hillstrom Equities, Andrew had no intention of

7  performing them.

8      97.    Indeed, at the time Andrew was negotiating the Advertising

9  Agreement and LLC Agreement, he was secretly negotiating and planning to

10  enter into an agreement with Reuters for the same purpose as the

11  Advertising Agreement.

12      98.    Andrew advised Gen Ads that he was discussing with Reuters an

13  agreement to provide content for the Breitbart site and that Gen Ads would

14  benefit from such content.

15      99.    By making affirmative representations about Reuters, Andrew

16  created a duty to fully disclose the nature of his communications with

17  Reuters.

18      100.   Andrew hid and failed to disclose to Gen Ads, Cartmell Holdings,

19  and Hillstrom Equities his activities in connection with Reuters, and in

20  particular that he was negotiating an agreement that would divert traffic

21  away from the Breitbart Site to the Reuters web site.

22      101.   By diverting traffic away from the Breitbart Site to the Reuters

23  site, the value of advertising Gen Ads was negotiating to sell for BL would be

24  materially diminished.

25      102.   Had Gen Ads, Cartmell Holdings, and Hillstrom Equities known

26  that Andrew was negotiating for a deal that would divert traffic away from

27  the Breitbart site (and thereby diminish potential advertising revenue), then

28  they would not have entered into the Advertising Agreement and LLC

COMPLAINT - 16

1  Agreement with Andrew and BL.

2  103.  Additionally, Andrew hid and failed to disclose to Gen Ads,

3  Cartmell Holdings, and Hillstrom Equities that he planned to send traffic

4  from <<drudgereport.com>> to the Reuters site, which he would otherwise

5  have sent to the Breitbart Site, if his agreement with Reuters materialized.

6  104.  Had Plaintiffs known of Andrew's secret intent to send traffic to

7  Reuters, to the detriment of the Breitbart Site, from <<drudgereport.com>>

8  then Plaintiffs would not have entered into the Advertising Agreement and

9  LLC Agreement.

10  105.  Shortly after entering into the LLC Agreement on behalf of BL

11  and the Advertising Agreement, Breitbart actually did send traffic from

12  <<drudgereport.com>> to the Reuters site which he otherwise would have

13  sent to the Breitbart Site.

14  106.  As a result of the traffic Andrew sent to the Reuters site instead

15  of to the Breitbart Site from <<drudgereport.com>>, the value of advertising

16  Gen Ads sold on the Breitbart Site diminished substantially.

17  107.  At the time Andrew made the Representations and at the time

18  Gen Ads entered into the Advertising Agreements, Gen Ads was ignorant of

19  Andrew's secret intention not to perform and Gen Ads could not, in the

20  exercise of reasonable diligence, have discovered Andrew's secret intention.

21  108.  At the time Andrew made the Representations and at the time

22  Cartmell Holdings and Hillstrom Equities entered into the LLC Agreement,

23  they were ignorant of Andrew's secret intention not to perform and could not,

24  in the exercise of reasonable diligence, have discovered Andrew's secret

25  intention.

26  109.  In making these Representations, Andrew induced Gen Ads to,

27  and Gen Ads in fact did, enter into the Advertising Agreement with BL and

28  BHI in reliance upon the representations.  Had Gen Ads known the actual

COMPLAINT - 17

1  facts, Gen Ads would not have taken such action.

2  110.   In making the Representations, Andrew induced Cartmell

3  Holdings and Hillstrom Equities to, and they in fact did, enter into the LLC

4  Agreement with BL and BHI in reliance upon the Representations.  Had

5  these parties known the actual facts, they would not have taken such action.

6  111.   Plaintiffs' reliance on Andrew's representations was justified

7  because Andrew controls both BHI and BL, and was in a position to fulfill his

8  promises on behalf of BL if he so desired.

9  112.   In doing the acts herein alleged, Andrew acted with oppression,

10  fraud, and malice.

11  113.   Plaintiffs do not wish to rescind said agreements, but rather elect

12  to enforce them and recover its damages.

13  114.   Andrew undertook the acts alleged herein on behalf of himself

14  and his marital community.  Accordingly, Andrew Breitbart, Susannah Bean

15  Breitbart and the Breitbart marital community are jointly and severally

16  liable for said fraud.

17  115.   As a proximate result of Andrew's fraud and deceit, Gen Ads was

18  induced to enter into an the Advertising Agreement and Cartmell Holdings

19  and Hillstrom Equities were induced to enter into an the LLC Agreement by

20  reason of which Plaintiffs have been damaged in an amount to be proved at

21  trial but which Plaintiffs believe exceeds $75,000.00.

22

23  ## IX.  SIXTH CAUSE OF ACTION
### COPYRIGHT INFRINGEMENT
**(By Gen Ads Against Breitbart.com, LLC, Andrew Breitbart, Mrs.**

24  **Breitbart, and the Breitbart Marital Community)**

25  116.   Plaintiffs incorporate the allegations set forth in paragraphs 1

26  through 115 above as though fully set forth herein.

27  117.   Gen Ads is, and at all relevant times has been, the copyright

28  owner under United States copyright law with respect to the Original Code,

COMPLAINT - 18

1    which it uses to place advertisements dynamically on a Gen Ads client site,

2    such as the Breitbart Site.

3        118.    The Original Code is copyrightable subject matter under the

4    Copyright Act, 17 U.S.C. § 101, *et seq*.

5        119.    Gen Ads has complied in all respects with the provisions of the

6    Copyright Act and, on December 30, 2005, Gen Ads registered the copyright

7    in the Original code with the United States Copyright Office, and secured

8    Certificate of Registration No. TX 6-253-208, a copy of which is attached

9    hereto as **Exhibit C**.

10       120.    Among the rights granted to Gen Ads under the Copyright Act

11   are the exclusive rights to reproduce the Original Code and to distribute the

12   Original Code to the public.

13       121.    Gen Ads is informed and believes that defendants BL and

14   Andrew Breitbart, beginning sometime between December 14, 2005 and

15   January 3, 2006, without the permission or consent of Gen Ads, has used, and

16   continues to use, the Original Code to place advertisements on the Breitbart

17   Site.

18       122.    In doing so, Andrew and BL violated Gen Ads's exclusive rights of

19   reproduction and distribution and has infringed Gen Ads's copyright rights.

20       123.    Andrew undertook the acts alleged herein on behalf of himself

21   and his marital community.  Accordingly, Andrew Breitbart, Susannah Bean

22   Breitbart and the Breitbart marital community are jointly and severally

23   liable for said copyright infringement.

24       124.    As a result of the infringement by Andrew and BL of Gen Ads's

25   copyrights and exclusive rights under the United States Copyright Act, Gen

26   Ads is entitled to statutory damages pursuant to 17 U.S.C. § 504(c) against

27   Andrew, BL, Mrs. Breitbart, and the Breitbart martial community.  Gen Ads

28   is further entitled to its attorney's fees and costs pursuant to 17 U.S.C. § 505.

COMPLAINT - 19                          **NEWMAN & NEWMAN,**          505 Fifth Ave. S., Ste. 610
                                        **ATTORNEYS AT LAW, LLP**     Seattle, Washington 98104
                                                                     (206) 274-2800

## X.  SEVENTH CAUSE OF ACTION
### DECLARATORY JUDGMENT
#### (By Gen Ads Against Breitbart.com, LLC)

125.   Plaintiffs incorporate the allegations set forth in paragraphs 1 through 124 above as though fully set forth herein.

126.   BL claims that Gen Ads is obligated to comply with unreasonable, arbitrary and burdensome requirements of performance under the Advertising Agreement, and that Gen Ads's failure to comply with such requirements constitutes a breach by Gen Ads.

127.   Gen Ads denies that it is obligated to comply with the requirements unilaterally imposed by BL, and denies that it is breaching the Advertising Agreement.

128.   A justiciable substantial controversy exists between BL and Gen Ads concerning their respective rights and duties under the Advertising Agreement.

129.   Gen Ads and BL have an existing legal relationship and genuine rights and interests upon which this Court's judgment may effectively operate with the force and effect of a final judgment at law or decree in equity.

130.   This proceeding is genuinely adversary in character between Gen Ads and BL.

131.   A declaration by the Court would terminate the controversy between Gen Ads and BL.

132.   The parties suffer from uncertainty and insecurity with respect to rights, status and other legal relations among them which can only be remedied by the Court.

133.   This substantial controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

134.   This Court has the power to declare the rights, status and other legal relations between the parties pursuant to 28 U.S.C. § 2201, et seq.

COMPLAINT - 20

135.   Gen Ads desires a judicial determination of its rights and duties under the Advertising Agreement, and a declaration that Gen Ads is not obligated to comply with the requirements imposed by BL and is not in breach of the Advertising Agreement.

## XI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendants, jointly and severally, and in favor of Plaintiffs, as follows:

1.    For damages in amount to be proven at trial;

2.    For its attorney's fees and costs incurred herein;

3.    For statutory damages for each infringement of the Original Code pursuant to 17 U.S.C. § 504;

4.    For an injunction prohibiting further infringement of the Original Code pursuant to 17 U.S.C. § 502;

4.    For its costs in this action;

5.    For punitive and exemplary damages;

6.    For a declaration that Gen Ads is not required to comply with BL's purported compliance standards, and is not in breach of the Advertising Agreement; and

7.    For such other and further relief as may be just and proper.

Dated this 26th day of January, 2006.

Respectfully Submitted,

**NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP**

By: _____

Derek A. Newman, WSBA 26967
Roger M. Townsend, WSBA No. 25525

Attorneys for Plaintiffs

COMPLAINT - 21

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800